CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 21 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ATLANTIC COAST PRODUCE, INC., et al. | ) ) | |
| Plaintiffs | ) ) | Civil Action No. 5:04CV00015 |
| v. | ) ) | **MEMORANDUM OPINION** |
| McDONALD FARMS, INC., et al. | ) ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiffs Atlantic Coast Produce, Inc., G. Cefalu & Brother, Inc., J.C. Banana & Co., Lambright Brokerage Co., Edward G. Rahll & Sons, Inc., Tony Vitrano Co., W. Deemer Class & Son, Bruce Hanshaw d/b/a/ Hanshaw Sales, Tamburo, Inc., and Parade Produce, Inc., and intervening plaintiffs Mullen Marketing LLC and Severt & Sons Produce move for summary judgment against defendants McDonald Farms, Inc. ("McDonald Farms"), Joan D. McDonald, James McDonald, Jr., Kimberly McDonald, Sunrise, L.L.C. ("Sunrise"), and Kahn, LLC ("Kahn").[1] Plaintiffs claim they are the beneficiaries of a statutory trust pursuant to section 5(c) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c). The court finds that there are no genuine issues of material fact and that plaintiffs are entitled to judgment as a matter of law.

I.

The fourteen plaintiffs in this action are corporations or individuals engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities ("produce") in interstate commerce and, at all times pertinent, were licensed as produce dealers

---

[1] Intervening plaintiff Taylor Farms Maryland, Inc. has also moved for summary judgment, but was not present at the motion hearing held on May 17, 2005. Intervening plaintiff Santanna Banana, Inc. has not moved for summary judgment and was not present at the hearing.

under PACA. Defendant McDonald Farms is a Virginia corporation engaged in the business of buying wholesale quantities of produce in interstate commerce and was licensed under PACA as a dealer. Between November 12, 2002, and February 13, 2004, the plaintiffs sold to McDonald Farms wholesale amounts of produce which McDonald Farms accepted but has not paid for. The plaintiffs have submitted unpaid invoices to the court as evidence of their claims, in the following unpaid amounts:

| | |
|---|---|
| Atlantic Coast Produce, Inc. | $44,584.50 |
| G. Cefalu & Brother, Inc. | $117,603.21 |
| J.C. Banana & Co. | $3,306.50 |
| Lambright Brokerage Co. | $1,024.75 |
| Edward G. Rahll & Sons, Inc. | $282,049.68 |
| Tony Vitrano Company | $4,151.69 |
| W. Deemer Class & Son | $39,616.69 |
| Bruce Hanshaw, d/b/a Hanshaw Sales | $42,745.98 |
| Tamburo Inc. | $10,861.75 |
| Parade Produce | $57,605.21 |
| Mullen Marketing, LLC | $97,671.70 |
| Severt & Sons Produce | $53,515.69 |
| Taylor Farms, Inc. | $58,404.00 |
| Santanna Banana Company | $22,350.50[2] |

Plaintiffs Atlantic Coast Produce, Inc., G. Cefalu & Brother, Inc., J.C. Banana & Co., Edward G. Rahll & Sons, Inc., Tony Vitrano Company, W. Deemer Class & Sons, Parade Produce, Tamburo Inc., Hanshaw Sales, Mullen Marketing, Severt & Sons Produce, Taylor Farms, and Santanna Banana notified McDonald Farms that their produce was sold subject to the trust provisions of PACA by including the language required by section 499e(c)(4) on their invoices. Lambright Brokerage Company notified McDonald Farms of its intent to preserve its

---

[2]These amounts reflect the claims detailed in plaintiffs' PACA Trust Chart, submitted in accordance with the court's amended scheduling order entered on December 16, 2004. The chart is attached as an appendix to this opinion.

2

PACA rights on March 1, 2004, within the time prescribed by section 499e(c)(3).[3]

Defendant Joan McDonald is the sole shareholder of McDonald Farms. She and her children, James McDonald, Jr. and Kimberly McDonald, are officers and directors of McDonald Farms and were responsible for managing the daily operations of the company. McDonald Farms maintained two bank accounts at the First Bank in Strasburg, Virginia: a Wholesale Produce Account and an Orchard Account. All three McDonalds were signatories on both accounts.

Sunrise is a Virginia limited liability company formed in January 1997, and owned by Joan McDonald, the managing member and majority owner, and Kimberly McDonald. Sunrise is a real estate holding company and owns the real property located at 2313 Middle Road, Winchester, Virginia 22601 ("the Sunrise property"). Sunrise has not maintained a bank account for over three years, during which time McDonald Farms has paid all expenses associated with the property. Kahn is a Virginia limited liability company formed in January 1997, and owned by Joan McDonald, the managing member and majority owner, and James McDonald. Kahn is a real estate holding company and owns two parcels of real property in Winchester, Virginia: 8.59 acres known as the Boyce Orchard and 148.95 acres known as the Wright Orchard ("the Kahn property").

Pursuant to a lease agreement dated January 1, 1998, McDonald Farms leased the Boyce Orchard and the Wright Orchard from Kahn and the property at 2313 Middle Road from Sunrise. As rent for these properties, McDonald Farms paid all real estate taxes associated with the properties, tax return preparation costs for Kahn and Sunrise, and water and electric bills

---

[3]The letter was submitted to the court as an attachment to the plaintiffs' complaint.

3

associated with the properties. McDonald Farms operated the orchards on the Kahn property and listed its business address as the Sunrise property. From 1998 to 2003, Joan McDonald commingled proceeds from the sale of fruit grown on the leased orchards with proceeds from the sale of wholesale fruit provided by the plaintiffs, and she deposited the commingled proceeds into both of McDonald Farms' accounts at First Bank. In 2003-2004, McDonald Farms used the commingled proceeds to pay monthly bank loan installments on a loan from Valley Farm Credit, that was secured by the Sunrise property. McDonald Farms also used the commingled proceeds to pay 2004 property taxes owed by Sunrise and Kahn.[4]

In March 2004, Joan McDonald, as representative of McDonald Farms and Sunrise, refinanced several loans owed by both companies. In essence, the agreement with Valley Farm Credit consolidated three loans owed by McDonald Farms, providing the Sunrise property as security for the loans. Pursuant to the modification agreement, McDonald Farms and Joan McDonald replaced Sunrise as obligors on a credit line loan owed by Sunrise. Shortly thereafter, McDonald Farms filed a voluntary Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Virginia. In re McDonald Farms, Inc., Case No. 04-00534 (March 19, 2004).

This court entered a preliminary injunction on April 30, 2004, enjoining the defendants from alienating, dissipating, encumbering, transferring, paying over, or assigning any assets of Sunrise, and on June 18, 2004, the court entered the same order with regard to assets of Kahn.

---

[4]Checks submitted by the plaintiffs also indicate from 1999-2004, Joan, James, and Kimberly McDonald wrote checks and made cash withdrawals from the McDonald Farms account for their personal use. In addition, in March 2004, James and Kimberly McDonald each paid themselves an additional $300 per week in salary from the McDonald Farms account.

4

On October 4, 2004, the court entered a consent order providing for the establishment of a PACA trust account with funds from McDonald Farms' bank accounts and accounts receivable recovered by the bankruptcy trustee. The trustee turned over $154,172.77 in trust assets. The order further provided that all qualified PACA trust beneficiaries would share pro-rata in the distribution of trust assets.[5] Plaintiffs asserted objections to the PACA trust claims of Mullen Marketing, LLC and Santanna Banana Co, claiming that they had failed to properly preserve their rights under PACA.[6] This court has entered a Memorandum Opinion and Order finding that Mullen Marketing and Santanna Banana did properly preserve their rights and are entitled to PACA trust benefits.

In their opposition to the motion for summary judgment, the defendants do not dispute the amount or validity of the plaintiffs' and intervening plaintiffs' PACA trust claims. However, defendants argue that the individual defendants, Joan D. McDonald, Kimberly McDonald, and James McDonald, Jr. should not be held secondarily liable and that there is a disputed issue of fact regarding whether Sunrise and Kahn can be held liable as third party transferees of trust assets.

## II.

The plaintiffs have perfected their PACA trust rights and have provided undisputed evidence of their claims. The court finds that there is no genuine issue of material fact regarding McDonald Farms' liability to the plaintiffs. In addition, there is no genuine issue of material fact

---

[5]Taylor Farms Maryland, Inc., Severt & Sons Produce, Inc., Mullen Marketing, LLC, and Santanna Banana Co., Inc. filed intervenor complaints after entry of the October 4 consent order.

[6]The plaintiffs noted at the May 17, 2005, hearing that objections to all other plaintiffs' and intervening plaintiffs' claims had been resolved.

concerning the personal liability of the individual defendants, because they were in a position to control trust assets and breached their fiduciary duty to control those assets. Finally, there is no genuine issue of material fact regarding the liability of Kahn and Sunrise as third party transferees of trust assets.

Congress enacted PACA to promote fair business practices in the marketing of perishable agricultural commodities. The stated purpose of the PACA is to remedy "a burden on commerce in perishable agricultural commodities [caused] by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, . . . encumber or give lenders a security interest in such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products . . ." 7 U.S.C. § 499e(c)(1). Under PACA, the buyer's acceptance of the produce creates a nonsegregated "floating" trust on the proceeds derived from sale of the produce. The unpaid supplier is the beneficiary of this trust and, once it has properly preserved its rights, it has a security interest in the trust assets superior to any other lien or security interest in inventory.[7]

The PACA trustee's primary duty is to "maintain trust assets in such a manner that such assets are freely available to satisfy outstanding obligations." 7 C.F.R. § 46.46(d)(1). A buyer violates PACA when it undertakes "any act or omission which is inconsistent with this responsibility, including dissipation of trust assets." 7 C.F.R. § 46.46(d)(1). The regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets

---

[7]Under PACA, a supplier can give notice in two ways: via a written notice within thirty calendar days after payment was due, 7 U.S.C. § 499e(c)(3) ("notice method"); or via a printed statement on its regular invoices, 7 U.S.C. § 499e(c)(4) ("invoice method").

6

or which could prejudice or impair the ability of unpaid suppliers. . .to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

In the event that a buyer becomes bankrupt with existing accounts receivable, it must hold produce-related receivables in trust until it pays all qualified sellers in full. Boulder Fruit Exp. v. Transp. Factoring Inc., 251 F.3d 1268, 1271 (9th Cir. 2001). If the buyer commingles produce-related assets with other funds, all funds become part of the floating PACA trust unless the buyer proves that particular assets did not derive from produce sales. Sanzone-Palmisano Co. v. M. Seaman Enterprises, 986 F.2d 1010, 1013-14 (6th Cir. 1993). If the buyer fails to prove this, a PACA beneficiary may recover any of the buyer's assets, up to the amount owed, ahead of other creditors. In re. Gotham Provision Co., 669 F.2d 1000, 1010 (5th Cir. 1982).

If the buyer does not have sufficient assets to satisfy its PACA obligations to the unpaid suppliers, then individual shareholders, officers, and directors of the buyer corporation may be held personally liable if: (1) they are in a position to control trust assets, and (2) they breach their fiduciary duty to preserve those assets. Goldman-Hayden Co., Inc. v. Fresh Source Produce, Inc., 217 F.3d 348, 351 (5th Cir. 2000).

Beneficiaries of a PACA trust may also recover trust assets paid to a third-party transferee. PACA does not impose explicit obligations upon, or provide explicit remedies against, third-party transferees who receive trust property in breach of trust. However, these transfers are governed by general principles of trust law. See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2d Cir. 1995); see also C.H. Robinson Co. v. Trust Company Bank, 952 F.2d 1311, 1313 (11th Cir. 1992). Under general trust principles, a "bona fide purchaser" may retain trust property even if the property was obtained in breach of trust.

Restatement (Second) of Trusts § 284(1). To qualify as a bona fide purchaser, however, the third party transferee must show that it received the trust assets for value and without notice of the breach of trust. C.H. Robinson, 952 F.2d at 1314. The burden of proof is on the transferee to show that it was a bona fide purchaser for value. See Oscar Gruss & Son v. First State Bank, 582 F.2d 424, 432 (7th Cir. 1978).

A.      Liability of McDonald Farms

The court finds that there is no genuine issue of material fact regarding McDonald Farms' liability to the plaintiffs. The evidence before the court establishes, and defendants do not dispute, that the plaintiffs supplied produce to McDonald Farms which was subject to the provisions of the PACA. There is also no genuine dispute that McDonald Farms failed to comply with PACA's mandate that it make "full payment promptly" for the produce supplied. See 7 U.S.C. § 499b. The plaintiffs have established that they each properly preserved their PACA trust interests, either by the notice or invoice method, and they are therefore beneficiaries of the statutory trust.

There is also no genuine issue of material fact as to whether McDonald Farms breached the duty it owes to plaintiffs as trustee of PACA trust assets. McDonald Farms does not dispute that its assets are insufficient to satisfy its obligation to the plaintiffs. Because there is no genuine issue as to whether McDonald Farms has maintained trust assets in such a manner that the assets are "freely available" to satisfy its debts to the plaintiffs, the court finds that McDonald Farms has breached the PACA trust. The plaintiffs are therefore entitled to judgment as a matter of law against McDonald Farms.

8

### B. Liability of Joan, James, and Kimberly McDonald

The plaintiffs also claim that Joan, James, and Kimberly McDonald are personally liable. There is no question that Joan, James, and Kimberly McDonald were in a position to control the assets of the PACA trust. Joan McDonald was an officer, director, and sole shareholder of McDonald Farms. She was a signatory on McDonald Farms' bank accounts and was listed as a principal on the company's PACA license. James and Kimberly McDonald were both officers of McDonald Farms and listed as signatories on the company's bank accounts. Both were responsible for and participated in the day-to-day operations of the company. Despite this responsibility, the undisputed evidence establishes that Joan, James, and Kimberly McDonald dissipated trust assets by using them for purposes other than payment of the plaintiff suppliers. The plaintiffs are therefore entitled to judgment as a matter of law against the individual defendants.

### C. Liability of Kahn and Sunrise

Finally, the plaintiffs claim that Kahn and Sunrise are liable for McDonald Farms' breach of the trust as third party transferees of trust assets. They argue that Kahn and Sunrise owe them the full amount of the debt from any trust assets accepted from McDonald Farms while McDonald Farm was in breach, because Kahn and Sunrise knew or should have known that the transfer was made in breach of trust. Kahn and Sunrise can escape liability only if they show that they "(i) gave value for the trust property; and (ii) had no actual or constructive notice of the breach of trust." Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir. 1998).

The undisputed facts establish that Joan McDonald transferred assets of McDonald Farms that were subject to the PACA trust to Kahn and Sunrise in breach of trust. Furthermore, the court finds that there is no genuine issue of material fact regarding whether the officers of Kahn and Sunrise knew or should have known that McDonald Farms transferred assets in breach of trust. The undisputed facts establish that, in addition to being the sole shareholder and an officer and director of McDonald Farms, Joan McDonald was a majority shareholder and officer of both Kahn and Sunrise. James McDonald was an officer of both McDonald Farms and Kahn. Similarly, Kimberly McDonald was an officer of both McDonald Farms and Sunrise. Given this common identity, the court finds that the officers of Kahn and Sunrise had notice that the assets of McDonald Farms were transferred in breach of the PACA trust. Thus, Kahn and Sunrise were not bona fide purchasers. The plaintiffs are entitled to recover the assets received in breach of trust from Kahn and Sunrise.

### III.

The plaintiffs also claim that they are entitled to an award of attorneys' fees and costs. PACA allows for recovery of "full payment of sums owing in connection with [commodities] transactions." 7 U.S.C. § 499e(c)(2). Several courts have found that this language encompasses not only the price of commodities provided, but also "related expenses [such as] attorneys' fees and interest that suppliers and buyers have bargained for in their contracts." <u>Country Best v. Christopher Ranch LLC</u>, 361 F.3d 629, 632 (11th Cir. 2004); <u>see also</u> <u>Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.</u>, 307 F.3d 1220, 1223 (9th Cir. 2002). The evidence shows that plaintiffs G. Cefalu & Brother, Inc. and Hanshaw Sales included notations on their invoices stating that the purchaser was liable for attorneys' fees and costs. This notation, under

10

general contract principles, created a contractual right to such additional "sums owing in connection with" the parties' transaction. Accordingly, the court awards plaintiffs G. Cefalu & Brother, Inc. and Hanshaw Sales attorneys' fees and costs.

IV.

For the reasons stated, the court will enter judgment for the plaintiffs in the amount of $835,491.85, plus attorneys' fees and costs for plaintiffs G. Cefalu & Brother, Inc. and Hanshaw Sales. The court directs the parties to submit a proposed judgment order within 10 days implementing the court's opinion and reflecting a pro rata distribution of damages.

ENTER: This 21st day of July, 2005.

UNITED STATES DISTRICT JUDGE